### 11726. DAVIS *v.* THE STATE.

BROYLES, C. J. The evidence authorized the verdict, and none of the special grounds of the motion for a new trial shows cause for a reversal of the judgment overruling the motion.

*Judgment affirmed. Luke and Bloodworth, JJ., concur.*

DECIDED NOVEMBER 9, 1920.

Indictment for manufacture of intoxicating liquor; from Macon superior court—Judge Littlejohn. June 24, 1920.

The sheriff testified: that he went to the defendant's house when the defendant was there, unlocked the defendant's smoke-house with a key furnished him by the defendant, and found in the smokehouse three tubs of mobby, boiling hot, and two barrels of beer. Mobby is beer after the whisky has been run out of it. He smelled the mobby, and would say that beer from which mobby could be made was alcoholic. The barrels of beer were buried in the ground and covered with a sack, some planks, and a meat box. The beer "looked like it had just been put up; sack of meal, 25-pound flour sack; looked to be probably a peck or so of corn that looked like it was just boiled and poured in there, and the barrels filled with sweetened water. It had not reached a state of fermentation. Such a mixture as that is used for making whisky." The meal and boiled corn with the sweetened water, in the quantities mentioned, would make an acceptable beer for the manufacture of intoxicating liquor. The witness further testified: "Around his premises we found a trough. There was a road that went from his house down to the creek, and there was a gully washed out from the road, and those gullies were filled with cane pummace. In one of those gullies was a trough with a hole in each end of the head. Troughs with holes in either end may not be used for watering hogs or horses or anything like that. All I ever saw were made to put a still worm through and make whisky." Such a trough is capable of being used for the accommodation of a worm for the purpose of pouring water over it in

the trough, for the distillation of intoxicating. liquor. The witness did not know of any other practical purpose for which it could be used. In the smokehouse were two tubs "about the size of the one that was used for making the whisky in," a half barrel that was torn down and the hoops and things were under the edge of the house. There was another half barrel that looked as if it was off the same barrel, but it had not been used in some time. The witness was then asked if he found any cap, and answered, "That was what I was speaking about; it was used for a cap." "In the room in the house the floor was wet and smelled sour with beer, and there were some six or eight brick piled up by the side of the fireplace that were hot, and a bucket of mud and clay sitting up in the corner of the house, sort of covered up." On the broken pieces of the barrel found under the house the tub was muddy and stained, and the mud on the barrel staves and on the tub compared with the mud found in the bucket in the house — was the same thing. Mud is used for the purpose of combining the cap with the heater in making liquor. A barrel of syrup was found in the barn. On the fence were old sacks and old quilts, muddy and wet, and smelling of sour beer. In the house a quart of home-made whisky was found by reaching up the chimney, and the defendant, when talking about it, said, "I may serve twenty years for this, but I'll tell the truth; there ain't a speck of potash in that; it's pure whisky; that's straight whisky. You saw the corn and stuff it's made out of. That's all the kind you get down there; it is pure stuff." This was said freely and voluntarily. The whisky was intoxicating and looked as if it was made out of syrup and corn; the defendant said it was made out of the same kind of stuff that was in those barrels. The witness found a pot boiler, a zinc tub, and a fire at one end of the house; no worm was found, and he asked the defendant to show the worm to him, and the defendant said, "You will have to find that. I done everything you told me, but that's one thing I ain't going to do." He found water there, a well and a creek. At the trial the defendant stated that the beer was there for his hogs, that he had no still or worm and had made no whisky, and did not know that the bottle of whisky was up the chimney; that about two weeks before that time a doctor had directed him to get some for his boy, who had pneumonia, and he got about five pints and gave it to his wife,

and that "after they came in she put it up the chimney to keep them from finding it."

In subdivisions of ground 1 of the amendment to the motion for a new trial, beginning, "that the verdict is contrary to evidence and without evidence to support it," for reasons stated, there is a summary of testimony of the sheriff, with objections to parts of it as being nonexpert opinion and mere conclusions. It was further contended that the verdict and the sentence, which fixed a term of from one to three years in the penitentiary, were excessive and "out of proportion to the crime charged," and "contrary to every principle of Democratic government and to the principles of justice and equity." In the brief of counsel for the plaintiff in error it is stated that "the amended motion is an attempted elaboration of the original motion for new trial, . . . together with several minor assignments on rulings of the court, . . . now insisted upon for the reason that the admission of the testimony objected to was highly prejudicial to the rights of the defendant;" but there is no further reference to these rulings.

*Gilbert C. Robinson,* for plaintiff in error.

*Jule Felton, solicitor-general,* contra.